UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22186-CIV-KING

KALOE SHIPPING CO. LTD.,

     Plaintiff,

v.

GOLTENS SERVICE COMPANY, INC.,

     Defendant.

_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon the parties cross Motions for

Summary Judgment.[1]  Plaintiff's Third Amended Complaint (D.E. #129) purports to state

three causes of action against Defendant: 1) breach of contract; 2) negligence; and 3)

wrongful arrest.  Plaintiff now moves for summary judgment only as to its negligence

count.  Defendant moves on all three counts and argues that summary judgment is

appropriate on its behalf because: 1) Plaintiff is not the proper party to this suit, and

therefore cannot sue on the contract; 2) this is a contract case, so Plaintiff cannot sue in

tort; and 3) Plaintiff did not meet its burden of establishing that the arrests of the vessel

were wrongful.

---

[1]Both Plaintiff and Defendant filed their Motions (D.E. #157 & 158 respectively) on
November 8, 2010.  Both parties filed their responses on December 6, 2010 (D.E. #172 & 173).
Plaintiff filed its Reply (D.E. #175) on December 22, 2010 and Defendant its Reply (D.E. #174)
on December 13, 2010.

Upon careful consideration of the pleadings and the record, the Court finds that there is no genuine issue of material fact on liability in favor of Plaintiff as to Count I. As to Counts II and III, the Court finds summary judgment must be granted in favor of Defendant.

## I.    Undisputed Facts

Sometime in 2004, Mr. Petruicks, on behalf of Plaintiff Kaloe Shipping Co. Ltd. ("Kaloe"), entered into an agreement with Mr. Mimrins, a representative of ADG Ship Management ("ADG"), whereby ADG  would carry out management services for Plaintiff with respect to the vessel M/V Inzenieris Neciporenko ("Vessel").[2]  In late 2005, the Vessel experienced engine failure and was towed to Freeport, Bahamas.  Searching for a company to repair the engine, ADG invited Defendant Goltens Service Company, Inc., ("Goltens"), a company in the business of providing marine services, to inspect and diagnose the problems with the Vessel and to discuss a contract for the repairs thereof. The parties agreed (initially) that Defendant would install a remanufactured crankshaft in the main engine to replace what was deemed an unsalvageable crankshaft and to make other necessary repairs.  Their Agreements ("Agreements") were reduced to writing, and Goltens proceeded to complete the repairs.  (Attached to Pls. Third Am. Compl. as Composite Exhibit "A").

---

[2]As evidence in support of this agreement, Plaintiff provides a contract between itself and ADG, signed in 2005 and again in 2006.  Defendant argues this written and signed agreement is missing its essential terms and should be disregarded by the Court of proof that an agency relationship existed establishing Plaintiff's standing to sue on the Contract.

Subsequently, Plaintiff took the ship from Freeport to Rio Haina, Dominican Republic where it was loaded with cargo. It then proceeded towards San Juan, Puerto Rico when the Vessel again experienced engine failure at sea and was towed back to Rio Haina. Plaintiff advised Defendant Goltens of the breakdown and wanted Defendant to correct its prior repair work. Defendant Goltens conducted a joint survey with three of its employees to survey the damage. Upon review, Goltens then took the position that none of its work was faulty and that the cause of the engine damage was the result of an external force causing gradual contact between the bearing and thrust face. Plaintiff hired a third party Wartsilla, ("Wartsilla") to do the necessary repair work to enable the Vessel to resume its sea-going transport work.

The ship was arrested by Defendant Goltens for unpaid work it had performed on initial repairs preventing its leaving Rio Haina. Plaintiff paid Defendant Goltens to get the ship released. The parties negotiated release and the Vessel set sail towards St. Eustatius to take on bunker fuel, when the engine was again shut-down at sea due to major overheating of the engine and again had to be towed to port. The casualty inspection disclosed that Defendant Goltens had failed to drill oil drainage holes into the crankshaft flange, inhibiting the flow of oil into the Vessel's engine, causing blockages, backups, and over heating . Wartsilla, was again employed by Plaintiff to make repairs. Defendant Goltens again arrested the vessel for unpaid invoices. Following another negotiated release, Plaintiff paid $284,960.84, and the Vessel set sail on September 22,

-3-

2006. Following the final repair, the Vessel was sold for scrap.

Plaintiff filed their initial Complaint (D.E. #1) on August 31, 2006. After a year-long discovery period and the time for filing dispositive motions had passed, the Court held a final pre-trial conference on September 14, 2007. At said conference, the Court determined that neither party's pleadings alleged facts to state claims that could proceed to trial. The Court *sua sponte* dismissed the Complaint and the Defendant's counter claim without prejudice allowing the parties to amend. Plaintiff timely filed an Amended Complaint. The Court granted Defendant's Motion to Dismiss with prejudice, concluding that further amendment would be futile, since the Amended Complaint only reasserted the same conclusory legal statements of counsel without a clear statement of facts.

Plaintiff appealed said ruling, and the Eleventh Circuit reversed and remanded in part, stating "Kaloe would have standing to maintain a breach of contract claim against Goltens on ADG and Goltens' contracts if Kaloe had an agency relationship with ADG. ... Although the amended complaint alleges that Kaloe is the vessel's owner, but fails to identify who the parties' agents are or even mention ADG by name, Kaloe nonetheless has pleaded enough facts the amendment of which could allege that ADG was Kaloe's agent." *Kaloe Shipping C. LTD., v. Goltens Service Co. Inc.*, No. 08-11406 (February 27, 2009).

Pursuant to the Eleventh Circuit's mandate, Plaintiff filed its Second Amended Complaint. Defendant again moved to dismiss for failure to state a cause of action, and

-4-

for failure to add an indispensable party (ADG). This motion was granted without prejudice, allowing Plaintiff another opportunity to amend. The Court denied Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint on December 16, 2009, set the case for trial on February 28, 2011, and set discovery and motion deadlines of November 3, 2010 and November 8, 2010 respectively. (D.E. #140).

In the year that ensued the parties conducted almost no discovery. There were no depositions taken and on July 1, 2010, six months after the Court's trial Order was entered, the Court issued an Order to Show Cause why the case should not be dismissed for lack of prosecution. (D.E. #144). On October 8, 2010, Defendant filed a Motion to Compel Discovery (D.E. #151) and Motion for Sanctions (D.E. #155) which were both referred to Magistrate Judge Bandstra for consideration (D.E. #154, D.E. #156). As a result of the parties' delay in conducting discovery and Defendant's filing its Motion to Compel late in the discovery process, the parties filed the Cross Motions for Summary Judgment before the Court on November 8, 2010, without the benefit of the discovery Defendant had moved to compel. On December 3, 2010 Judge Bandstra granted Defendant's Motion to Compel, giving Plaintiff ten days to comply with Defendant's requests. The undersigned, in an effort to afford the parties the opportunity to complete the record with the newly ordered discovery, entered an Order on January 20, 2011 inviting the parties to submit supplemental briefs if, in fact, any of the discovery provided might be helpful to the Court in consideration of the issues before it. The parties were

-5-

given until Monday, January 24, 2011, and both parties have now filed supplements to their Motions for Summary Judgment (D.E. #183 & D.E. #184), which the Court has considered in ruling on these motions.

## II.    Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that, to meet its burden, the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve

-6-

all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III.   Discussion

Now before the Court are the parties' Cross Motions for Summary Judgement. Plaintiff's three claims are: 1) breach of contract; 2) negligence; and 3) wrongful arrest. The Court will address each in turn.

### A.   Breach of Contract (Count I)

Count I of Plaintiff's Third Amended Complaint seeks damages for the injury the Vessel sustained as a result of Defendant's failure to perform the work (repairs) specified in the Contract properly.

Preliminarily, the Court must address standing. Defendant argues that Plaintiff's breach of contract claim should fail because Plaintiff is not the party who signed the Contracts, and it failed to establish there was an agency relationship with the entity (ADG) who did sign. Defendant contends that ADG is the only party who has standing to enforce the Contracts Plaintiff Kaloe pleads has been breached in Count I of this suit. In response, Plaintiff maintains that an agency relationship has been established in this

-7-

record by the following documents:

First, two (2) agreements ("Bimco Agreements") between itself and ADG, showing

ADG's acceptance of responsibility for management of the ship. Bimco Agreements,

Attached to Pls. Resp. to Def.'s M. Summ. J. (D.E. #173, Exhibit "A"). Second, an e-

mail exchange between its agent, ADG, and Defendant Goltens whereby ADG puts

Defendant on notice that despite the fact that it (ADG) is arranging repairs, the actual

client is Kaloe and that invoices should be made out to Kaloe. (D.E. #184, Exhibit "A".)

The message to Defendant states, "Pls prepare invoice for first payment with correct

bellow (sic) customer name: Kaloe Shipping Co., Ltd., 171, Old Bakery Street, Valletta

VLT09, Malta. (DE # 184-1). Third, in support of its agency relationship, Plaintiff Kaloe

provides invoices wherein Defendant Goltens heeds to their requests and makes out

invoices directly to Kaloe. (D.E. #184-2).

Under *Attorney's Title Ins. Fund, Inc. v. Regions Bank*, 491 F. Supp. 2d 1087 (S.D.

Fla. 2007), Plaintiff has the burden of proof of the alleged agency relationship. "To

establish an actual agency relationship under Florida law, the plaintiff must show: (1)

acknowledgment by the principal that the agent will act for him, (2) the agent's

acceptance of the undertaking, and (3) control by the principal over the actions of the

agent." *Id.* (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n. 5 (Fla.1990) (citing

Restatement (Second) of Agency § 1 (1957)).

After careful analysis of the documents provided by Plaintiff, the Court finds that

-8-

Kaloe is the proper party to this action, and is entitled to bring suit on behalf of the actions its agent, ADG, took.  The BIMCO Agreements and ensuing actions taken by ADG on behalf of Kaloe show acknowledgment, acceptance and control sufficient to establish agency.  Moreover, the e-mail exchange between Defendant and ADG wherein Defendant acknowledges to ADG that the "correct customer" is Kaloe demonstrates Defendant's knowledge of Plaintiff's arrangement when the Contracts were entered into. The invoices in the record, submitted for payment to Plaintiff by Defendant, reflect Defendant's awareness because they were addressed to Kaloe rather than to ADG. Finding no case law to support Defendant's contentions of insufficiency, the Court finds that Plaintiff has standing.

With respect to Plaintiff's Count I claim for breach of contract, the uncontradicted facts establish that Kaloe, through its agent ADG, hired Goltens to conduct repair work on the Vessel.  To memorialize their agreement for repairs, the parties executed three Contracts.  Exhibit "A"to Pls. Third Am. Compl. (D.E. #129).  Both parties rely upon, and admit these documents constitute the written agreements of the parties.  (D.E. #129 ¶¶ 52, 54).  The first contract ("Contract One"), dated November 28, 2005, was for replacement of the Vessel's crankshaft.  Exhibit "A"to Pls. Third Am. Compl. (D.E. #129).  The second contract ("Contract Two"), dated January 5, 2006, was for the restoration of bearing caps & saddles.  *Id.*  The third ("Contract Three") and final contract, also dated January 5, 2006, was for the restoration of landing faces.  *Id.*  The

-9-

undersigned finds and treats the Contracts attached as Exhibit "A" to Plaintiff's Third

Amended Complaint as the operative Contracts governing the rights and responsibilities

of the parties in this case.[3]

According to the terms of the Contract One, it was the responsibility of Goltens to

perform:

> 1) Packing & shipping of tools. Hir(ing) of container (in required),
> documents, handling & customs. 2) Transport (including rent a car), air
> tickets, Immigration, hotel & food. 3) Fabrication of pad eyes &
> welding these in position. Cut a& re-weld access to Twin Deck. 4) 12
> hours working days of up to 5 techs. 40 days working with assistance
> from owners 5 techs. 5) 1 supervisor on share basis with MV KERA
> (another vessel not related to this action). 6) Dismantling of all engine
> components such as cylinder covers, pistons, connecting rods &
> bearings. Lifting of crankshaft. Cleaning & calibration of above
> mentioned components. Installation of new crank shaft & re-install all
> dismantled components. Owners are to supply own electrician to handle
> all electrical parts. 7) Grinding of landing faces & water jackets. 8)
> Line boring of engine: a) Machining of bearing caps & guide pins; b)
> Shipping, Handling & Customs charges for above; c) Line Boring of all

---

[3]On January 20, 2011, the Court ordered the parties to produce legible copies of the
Contracts governing this case. On February 1, 2011, Defendant submitted legible copies of
contract two and three. (DE #186). Plaintiff responded via e-mail (and copied Defendant's
counsel) and attached five documents: Four separate contracts, and the language of Defendant's
boiler plate terms and conditions, which Plaintiff's counsel "typed out as best he could into more
legible format." The copies of the contracts Plaintiff submitted were no better than those already
in the record. Furthermore, the Court is puzzled as to why Plaintiff attached a fourth contract to
counsel's email. The Court's careful review shows there are three Contracts attached to Exhibit
"A" to Plaintiff's Third Amended Complaint, three (3) Contracts which Defendant admits to
signing, and throughout the various pleadings themselves, Plaintiff has referenced that "the scope
of the work was contained in a series of three Contracts." (DE # 173 ¶48). The "fourth contract"
appears to be an identical copy of contract number two. Therefore, the Court will proceed with
the understanding that the parties executed three Contracts, and will disregard the fourth contract,
which appears to have been inadvertently included in counsel's e-mail.

pockets to standard size. d) Airfare Europe; e) Shopping of special tools f) Laser alignment before & after Line Boring; g) Hotel, meals, travel; h) Installation & removal of engine bloch (5 techs x 7 days). 9) Testing of bolts between flywheel & crankshaft by dye check or MPI depending n your requirements. 10) Consumables. 11) Bed plate alignment & shock *(illegible)* including 1 supervisor W. Philadelphia Resin Certificate. This will be done in accordance with pielstick & Class requirements. Procedures will be forwarded for approval by Class Society after order confirmation. 12) Test run in Freeport up to 12 hours.

*See* (D.E. #129-1).

Under Contract Two, Defendant was required to: "1) Fabricate 36 plates in MS. Plates need to finish surface on one side and rough cut on other sides. 2) Drill 9 holes in each plate & countersink to bolt size later specified. 3) Machine 18 bearing capes (total 36 surfaces0. Finish surface. Drill & tap 9 holes as per plates above. 4) Fit plates on bearing caps and machine to final size. 5) Bluefit all caps." (D.E. #129-1).

Finally, in Contract Three, Defendant was to restore landing faces onboard. The contact states that Defendant was responsible for the "Machining and oil recess on the upper main bearing jack on Pielstick PC 2.2.... [w]e will need to fabricate a bracket for mounting the machine and our intention is to mount this machine on the lower bearing cap/saddle main bearing bolts." (D.E. #129-1 at 8).

Plaintiff alleges that Defendant breached the Contracts when it failed to properly perform any of the work it was contracted for, resulting in the Vessel's engine. In support of its case, Plaintiff provided the deposition of its expert witness, Captain Ivo Knobloch, who conducted a casualty investigation on behalf of the Vessel's insurance company, Ingosstrakh,

together with the observers and representatives of both Kaloe and Goltens. (Knobloch Dep. 12:21-21.)[4] Captain Knobloch's investigations concluded that, when Goltens replaced the faulty crankshaft, it failed to drill oil drainage holes into the crankshaft flange, which prevented the lubrication system of the engine to function properly. This caused the engine to overheat and the Vessel to have to be towed to port. (Knobloch Dep. 69:1-4.) Captain Knobloch testified "that a prudent engine repairer performing a crankshaft replacement should make themselves familiar with the lubrication system for that particular engine, and realize that the replacement crankshaft in that particular incident was not equipped with drainage holes, and therefore, it interrupted the vital functioning of the engine. (Knobloch Dep. 158:12-17.)    Captain Knobloch further stated that "during the course of the investigation, the more it pointed away from an external force, but more to a, to deficiencies that existed int eh reassembling of various components that had been worked on by Goltens' mechanics, the more uncomfortable, and at some point I will say, hostile, the atmosphere became." (Knobloch Dep. 141:6-13.)[5]

---

[4] Captain Knobloch states that he was first contacted to conduct the investigation in November 2005 because Plaintiff's Vessel sustained engine damage in the Bahamas. (Knobloch Dep. 4:15-25, Sept. 12, 2007.) Captain Knobloch was subsequently called back when the vessel sustained damage while out at sea, where he again conducted another investigation in Rio Haina, Dominican Republic. *Id.* Captain Knobloch was called back a third time when the vessel once again suffered engine failure while out at sea and was towed to St. Maarten. (Knobloch Dep. 5:6-11.)

[5] At the deposition, Defendant's counsel raised the issue that the Contracts called for five individuals from Plaintiff's vessel to assist Goltens in conducting repairs. Defendant argued that it was impossible to know if it was one of Plaintiff's employees or the individuals from Goltens who failed to install the crankshaft properly. Captain Knobloch stated, and the Court agrees, "in

-12-

In order to prove claims for breach of contract, Plaintiff needed to offer evidence

of a contract, a material breach thereof, and damages. *See Admiral Ins. Co. v. Feit*

*Management Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply

the substantive law of the forum state unless federal constitutional or statutory law

compels a contrary result."). *See also*, *Bech v. Lazard Freres & Co., LLC*, 175 F.3d 913,

914 (11th Cir. 1999).

The disputed issue before the Court is whether the cause of the breakdown was

Defendant's failure to repair the Vessel in accordance to the terms of the Contracts, in a

workmanlike manner: *to wit*, whether Defendant breached the Contracts. The evidence

before the Court consists of an engineer, Ivo Knobloch, whose sworn deposition

testimony concludes that Defendant Goltens failed to properly repair the damaged engine

in that Goltens did not provide for essential lubrication flow to the crankshaft, causing the

overheating and destruction of the engine. Defendant Goltens did not rebut this testimony

with any evidence. It did not offer a single witness in opposition to Plaintiff's expert, Mr.

Ivo Knobloch. The record is clear that the cause of the engine breakdown of the Vessel

Inzenieris Neciporenko was the improper repair by Goltens. This is a material breach of

the Contract requiring Defendant to complete the engine repairs in a workmanlike

---

my experience, the outside contract is responsible for the proper completion of the repair."
(Knobloch Dep. 146:22-25.) Captain Knobloch went on to state, "of course I cannot tell you
who each individual was who touched each and every item. But from the whole work, as I
observed it there, I know that Goltens was involved in the more critical parts and required the
assistance of crew members, and they were in the lead of the repair." (Knobloch Dep. 148:15-
21.)

manner.

In the five years this case has been litigated, the parties had ample time to conduct all necessary discovery.[6] Yet, Defendant did not file a single affidavit or deposition in support of its Motion for Summary Judgment. Defendant simply relies on its general denials in its Answer, which broadly deny Plaintiff's assertions that Defendant failed to do the repairs properly. If there is no evidence in the record to support a general denial asserted only by the Answer, then the unrebutted allegations (as proven by Plaintiff's deposition evidence) of Plaintiff's Complaint may be considered undisputed fact for summary judgment purposes.

Resolving this issue requires the Court to examine the law on the effect of a failure to rebut or offer any evidence creating an issue of fact, and whether relying simply on an answer denying an allegation in Plaintiff's Complaint is or is not adequate to create an issue of fact. Case law shows that it is not. *See SEC v. Simmons*, 241 Fed. Appx. 660, 664 (11th Cir. 2007) ("A general denial of Plaintiff's claims contained in an answer or another pleading is not sufficient.") (citations omitted); *Maxi-Taxi of Fla., Inc., v. Lee County Port Authority*, 301 Fed. Appx. 881 (11th Cir. 2008) ("It is well settled that 'after adequate time for discovery and upon motion, [summary judgment is appropriate] against

---

[6] As noted above, on January 20, 2011, the Court gave the parties the opportunity to file supplemental briefs, appraising the Court of any additional discovery brought to light since the parties filed their respective motions for summary judgment. In its brief, Defendant stated that it was waiting for the names supplied by Plaintiff in late December, to schedule Depositions. The Court notes that Defendant waited until late December to schedule depositions when it had an entire year (the Court's scheduling order was issued on January 10, 2010) to defend this case.

-14-

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... Where a nonmoving party fails to present such evidence, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'") (citations omitted). Moreover, "[t]o controvert a proper motion for summary judgment a party may not rest upon allegations and denials in his pleadings; he must set forth specific facts showing a genuine issue for trial." *Garcia v. Am. Marine Corp.*, 432 F. 2d 6 (5th Cir. 1970).[7] As such, "[t]he Court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

A review of the record in this case shows that in six depositions were noticed by Defendant in 2007, but none were filed of record. Nor is there any docket entry of whether or not Defendant ever actually took the depos it had noticed it intended to take (other than Captain Knobloch's). The local rules for the Southern District of Florida state: "motions for summary judgment shall be accompanied by memorandum of law, necessary affidavits, and a concise statement of the material facts as to which the movant contends there exists no genuine issue to be tried." S.D. Fla. L. Rule 7.5 (a). Motions

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

must also "[b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, affidavits on file with the Court." S.D. Fla. L. Rule 7.5 (c)(2). The Court's ordered discovery deadline has passed and all discovery finished. The Court can only consider what is on the record. The Court has given the parties ample opportunity to create a complete and thorough record. Under the status of this record in the absence of contradictory evidence, the Court has no alternative but to conclude that Plaintiff has clearly demonstrated that the engine failure was caused by Defendant's poor workmanship and failure to perform the work in accordance with the terms of the Contracts. Therefore the Court finds that Defendant breached the Contracts.

Finally, turning to damages: Plaintiff has failed to present any evidence of the total monetary damages it sustained. The Court finds that appropriate damages include the repair costs incurred by the Plaintiff to correct the work and complete the repairs to the Vessel Goltens was required, by the Contracts, to have been performed. Plaintiff seeks a plethora of damages, which are not specified in the Contracts, *i.e.*, $924,000.00 for the loss potential earnings from carriage of commercial cargo, costs associated with having the vessel at port, surveyor costs and further repair work on the vessel. These claims are not referred to in the written Contracts whereas a cap on Defendant's liability is specifically agreed.

The Contract of the parties limits damages at $2,000,000.00. The Limitation of liability clause found in each Contract states, "[i]n the performance of work on vessels ...

-16-

in no event shall the aggregate liability of the Company to all the parties having an

Interest, direct or indirect or by subrogation, for damages sustained by them or an of

them, as a result of such injury and/or damages, excess the sum of $2,000,000.00."

This requires a trial on damages, on the two-week calendar of February 28, 2011 (set

January 6, 2010, D.E. #140).

### B. Negligence (Count II)

Plaintiff alleges that Defendant was required to use due care in performing its

work, but failed to do so. (D.E. #129 ¶ 60). Plaintiff further alleges that, by failing to use

reasonable care, Defendant proximately caused damage to the entire engine and all of its

connecting parts, not just the parts Defendant was contractually obligated to repair. (D.E.

#129 ¶ 61). In response, Defendant argues that Count II must fail as barred by the

economic loss rule.

"The economic loss rule is a judicially created doctrine that sets forth the

circumstances under which a tort action is prohibited if the only damages suffered are

economic losses." *Indem. Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532,

536 (Fla. 2004). "The economic loss rule was designed to prevent a party to a contract

from 'circumventing the allocation of losses set forth in the contract by bringing an action

for economic loss in tort.'" *Id*. In Florida, this judicially-created doctrines states that

"parties in privity of contract are generally prohibited from recovering in tort for

economic damages." *Id*. at 537. The doctrine is designed to prevent parties from

-17-

ignoring "the contractual relationship by bringing an action in tort" when they have already outlined their rights and duties in a bargained-for exchange. *Ginsberg v. Lennar Fla. Holdings*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994). However, it must be noted that "[t]he economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action." *Htp, Ltd. v. Lineas Aereas Costarricenses*, 685 So. 2d 1238, 1239 (Fla. 1996). That is, a party may seek tort damages "if conduct occurs that establishes a tort is distinguishable from or independent of [the] breach of contract." *Jones v. Childers*, 18 F.3d 899, 905 (11th Cir. 1994) (quotations and citations omitted).

The record in this case clearly establishes that Defendant Goltens' breaching conduct (faulty repair work) is precisely what Plaintiff has alleged in Count I of its Third Amended Complaint. Plaintiff has not established that Defendant's actions when repairing the Vessel were in anyway independent or distinguishable from the conduct that led to the breach of contract. The same duties Plaintiff alleges Defendant breached in its negligence count—to avoid negligent workmanship, use non-defective products, and warn of defects—are the very same duties Defendant was required to perform under the terms of the Contracts executed by the parties.

Florida courts and the Eleventh Circuit are in agreement that negligence, negligent failure to warn, and strict products liability generally do not allege conduct that is independent of the contractual breach. *See Royal Surplus Lines Ins. Co. v. Coachman*

-18-

*Indus.*, 184 Fed. Appx. 894, 903 (11th Cir. 2006) (negligence claim barred by economic

loss rule); *Pulte Home Corp. v. Osmose Wood Preserving*, 60 F.3d 734, 739 (11th Cir.

1995) ("We find that Pulte's negligence claim is barred by the economic loss rule and

does not meet either exception to the rule."); *Flamenbaum v. Orient Lines, Inc.*, 2004

U.S. Dist. LEXIS 14718 (S.D. Fla. July 28, 2004) (negligence claim barred by economic

loss rule). That is precisely the case here. The duties asserted breached in Count II are

already controlled by the Contracts between the parties. Thus, the claim in Count II is

barred by the economic loss rule, and Defendant's Motion for Summary Judgment on this

issue, is granted.

### C. Wrongful Arrest (Count III)

Count III, Plaintiff's final count for wrongful arrest, alleges that "after the work by

Goltens caused the Vessel to fail and sustain damage in April 2006, Goltens, in an effort

to fabricate an alleged maritime lien over the Vessel for unpaid repair invoices, created

sham invoice(s), backdated these sham invoices, and issued them to Kaloe for payment."

(DE # 129 ¶ 65). As a result of those unpaid invoices, the Vessel was arrested twice,

once in the Dominican Republic and once in St. Maarten. (Pl's Third Am. Compl. ¶ 66-

7). Defendant argues that Plaintiff's claim for Wrongful Arrest should fail because

Plaintiff did not establish that the arrests were in reckless disregard of its legal rights.

On the facts established in this record (or lack thereof), Plaintiff has not

established bad faith or malice by Defendant. To maintain an action for wrongful arrest

-19-

of a maritime vessel, the detainee must show that the arrest was not merely due to negligence but that the action arose from malice, bad faith, or reckless disregard of the other party's legal rights. *Furness Withy (Chartering), Inc. v. World Energy Systems Assocs., Inc.*, 854 F.2d 410, 411-12 (11th Cir. 1988). Plaintiff states that Defendant had no maritime lien over the Vessel under "applicable law" but does not flesh out what such applicable law is, or under what authority its vessel was arrested. (D.E. #129 ¶ 69(c).

Moreover, Plaintiff, for the first time in its Response to Defendant's Motion for Summary Judgment, asserts that Bahamian law applies to its wrongful arrest claim because the contract, and all of its repair work took place in the Bahamas. Without offering reasoning, or proffering a choice-of-law analysis, Plaintiff cites to *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377 (11th Cir. 2006) to support its proposition, but the Court finds *Dresdner* inapposite. In *Dresdner*, the Court dealt with two foreign parties who lacked a written agreement, the vessel was arrested in a U.S. Port, and the legal issue was over which law applied in foreclosure of the vessel's mortgage.

In the over five years of litigation in the United States District Court for the Southern District of Florida, neither party has ever objected (until now) to venue in this Court. No one has previously argued that this case was improperly brought under U.S. law, instead choosing to enforce the contract by alleging venue in this Court. Plaintiff states that the Vessel was "arrested" twice when Plaintiff failed to pay alleged sham

-20-

invoices. (D.E. #129 ¶ 66). Plaintiff further specifies that "Defendant was legally required and bound to, but purposely failed to, initiate any legal proceeding arising out of the repair work *in Miami-Dade County.*" (Pl's Third Am. Compl. ¶ 69(b)). Plaintiff has not shown the Court why, for the first time as to both arrests of the vessel, it should apply Bahamian law. Plaintiff only cites *generally* to Chapter 268 of the Bahamian Merchant Shipping Act, Part IX [sic]. The Bahamas's Merchant Shipping Act, however, addresses generally maritime liens and does not address arrests or attachment of a vessel. Plaintiff seems to now be complaining about the venue it selected. Therefore, the Court concludes that Plaintiff has not established how the arrest of its Vessel was in bad faith, or in any way unwarranted. The Court grants summary judgment for Defendant as to Count III.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED and DECREED** as follows:

1.  Partial Summary Judgment on liability be, and the same is hereby, **GRANTED**, in favor of Plaintiff Kaloe Shipping Co. Ltd. as to Count I of Plaintiff's Third Amended Complaint, but **DENIED** as to Counts II and III.

2.  Defendant Goltens Service Company, Inc.'s Motion for Summary Judgment (D.E. #158) be, and the same is **DENIED** as to Count I, but hereby **GRANTED** as to Counts II and III of the Third Amended Complaint.

3.  Judgment is hereby entered as to Plaintiff for Count I (liability only) and as to Defendant as to Counts II and III.

4.    Counsel for Plaintiff shall, within two days of this Order, submit appropriate draft Judgments in accordance with the Court's rulings set forth herein.

5.    The parties are herewith ordered to submit a Revised Pretrial Stipulation on the remaining issue for trial, i.e., damages asserted in Count I of the Third Amended Complaint by **Thursday, February 24, 2011 at 12:00 P.M.**; filed with the Clerk of Court, Southern District of Florida and courtesy copy filed with the chambers of the undersigned judge. This Revised Pretrial Stipulation shall be filed in accordance with the requirements of Local Rule 16.1(e). S.D.FL.L.R.16.1(e). The parties are required, by this Order, to meet and <u>stipulate</u> to the facts and law in sections one through eight as required by the rule. The Pretrial Stipulation filed by the parties (D.E. #176) simply stating the separate respective positions of each party does not comply with Local Rule 16.1(e) and will not be accepted by the Court. A <u>Stipulation</u> (agreement of parties) is required.

6.    The parties shall be prepared to go to trial on Count I, damages only, as scheduled by the Court's January 6, 2010 Scheduling Order, on the two-week calendar commencing **on February 28, 2011, at 9:30 A.M.** The parties shall be present for Calender Call **on February 24, 2011, at 2:00 P.M.** at the James Lawrence King Federal Justice Building, 99 N.E. 4th

-22-

Street, Eleventh Floor, Courtroom # 2, Miami, Florida, 33132.

**DONE AND ORDERED** in chambers at the James Lawrence King Federal

Justice Building and United States Courthouse, Miami, Florida, this 16th day of February,

2011.

*James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:   ***Counsel for Plaintiff:***
      Michael T. Moore, Esq.
      Scott Andrew Wagner, Esq.
      Moore & Company
      355 Alhambra Circle
      Suite 1100
      Coral Gables, FL 33134

      ***Counsel for Defendant:***
      Donna Ellen Albert, Esq.
      Donna E. Albert & Associates
      3000 NE 30th Place
      Suite 309
      Fort Lauderdale, FL 33306

      Marvin Kurzban, Esq.
      Kurzban Kurzban Weinger & Tetzeli
      2650 SW 27th Avenue
      2nd Floor
      Miami, FL 33133

-23-